'IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBBIE S. | ) | |
|       Plaintiff, | ) | |
| | ) | |
|       v. | ) | No. 24 C 11615 |
| | ) | |
| | ) | Magistrate Judge M. David Weisman |
| FRANK BISIGNANO, Social Security | ) | |
| Commissioner, | ) | |
|       Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Robbie S. appeals the Commissioner's decision finding him not disabled. For the reasons set forth below, Plaintiff's motion for summary judgment [19] is denied, and Defendant's motion for summary judgment [23][1] is granted. The Commissioner's decision is affirmed. Civil case terminated.

## Background

The Social Security Administration ("SSA") found Plaintiff disabled as of December 14, 1996 based on HIV disease and toxoplasmosis. On July 30, 2018, SSA found, pursuant to a continuing disability review ("CDR"), that Plaintiff's medical conditions had improved and he was no longer disabled as of July 1, 2018. (R. 157-159.) SSA concluded the "current medical evidence shows that there is no longer signs of toxoplasmosis, and the HIV, low back pain is stable and controlled on medications. There are no signs of significant limitations. The claimant's impairments are now non-severe. Therefore, medical improvement has occurred." (R. 71.) Plaintiff requested reconsideration, which was denied on April 9, 2019. (R. 130-133.) Plaintiff then requested an ALJ hearing, which was held on September 6, 2023. (R. 12.) On October 4, 2023, the ALJ issued an unfavorable notice of decision. (R. 9-27.) Plaintiff challenges the ALJ's conclusion.

## Analysis

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). Where, as here, a claimant has been deemed disabled, the SSA "must periodically conduct a continuing disability review to determine if the benefits recipient remains eligible." *Fitschen v. Kijakazi*, 86 F.4th 797,

---

[1] Although Defendant did not separately file a motion for summary judgment, the Court construes Defendant's memorandum in support of summary judgment [23] as including a motion.

803 (7th Cir. 2023); 20 C.F.R. § 416.989. A claimant is no longer eligible for benefits if there has been "medical improvement," meaning "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent . . . decision [in the claimant's favor]." 20 C.F.R. § 416.994(b)(1); *Kimberly T. v. Saul*, No. 19 C 487, 2019 WL 6310016, at *1 (N.D. Ill. Nov. 25, 2019). In conducting a CDR, the SSA compares the "severity of the individual's current medical condition(s) to the severity of the most recent favorable medical decision (i.e., comparison point decision (CPD))." SSA Program Operations Manual System ("POMS") DI 28035.00. Here, the parties agree that prior to the CDR, the most recent decision in Plaintiff's favor was on January 31, 1997, and thus is the proper CPD.

In assessing medical improvement, the SSA considers an eight-part test: "(1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1; (3) if not, whether there has been medical improvement (as defined above); (4) if there has been medical improvement, is it related to the claimant's ability to do work (i.e., has it caused an increase in his residual functional capacity (RFC)); (5) if there has not been medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exceptions to medical improvement apply; (6) if the medical improvement is related to the claimant's ability to do work or if certain exceptions apply, are his current impairments in combination severe; (7) if the claimant's impairment is severe, does he have the RFC to do past relevant work; and (8) if the claimant cannot do past relevant work, does his RFC enable him to do other work." *Milton B. v. Kijakazi*, No. 20 C 5482, 2023 WL 4134812, at *2 (N.D. Ill. June 22, 2023). *See also* 20 C.F.R. § 416.994(f).

In addition, the Court notes that "ALJs are 'subject to only the most minimal of articulation requirements'— an obligation that extends no further than grounding a decision in substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Plaintiff first asserts that a portion of his prior file finding him disabled was missing when the CDR was conducted. According to Plaintiff, "[w]hen a claimant's folder cannot be found during a CDR, and Social Security is unable or chooses not to reconstruct the missing records, benefits *must be continued*." (Pl.'s Mot. Summ. J., Dkt. # 19, at 3) (citing 20 C.F.R. 404.1594(c)(3)(v); 20 C.F.R. 416(994(b)(2)(iv)(E) ("If relevant parts of the prior record are not reconstructed either because it is determined not to attempt reconstruction or because such efforts fail, medical improvement cannot be found.") (emphasis added).[2] Plaintiff contends that while the

---

[2] Plaintiff further pointed to the following language in the regulations:

ALJ stated in his decision that "the file is complete," the ALJ in fact did not review the January 30, 1997 Medical Advice Form from Dr. Kumar.[3]  Because this form was part of the original CDP and it was missing from Plaintiff's file at the time of the CDR, Plaintiff asserts that the ALJ was required to continue Plaintiff's benefits and erred in discontinuing them.

As the Commissioner notes, "both the regulations and agency policy contemplate scenarios in which the original CPD is missing but the CDR analysis may nevertheless proceed."  (Def.'s Sur-Reply, Dkt. # 27, at 2.)  For example, if a CPD is missing an RFC, and the RFC was the basis for originally finding the claimant disabled, the ALJ can analyze whether medical improvement has occurred by reconstructing the RFC from the medical evidence and comparing it to the claimant's current functioning. 20 C.F.R. § 404.159(c)(3)(iii).  And POMS DI 28035.020(E) states that "[i]n order to apply the [medical improvement review standard] to reconstructed evidence, there should be adequate evidence from the time of the CPD so that the basis for the CPD is clear."  Also, if a CPD is unclear, POMS[4] allows an adjudicator to "review the available evidence to determine the correct basis" for the CPD and "determine if medical improvement has occurred."  POMS DI 28010.020(B)(5).  And "[w]hen CPD evidence is adequate[] but is incomplete on points emphasized in current available evidence," an adjudicator can "carefully examine all the prior documentation for related information that may have been present at the CPD but is not immediately evident."  POMS DI 28010.015(E)(3).  The Court agrees with the Commissioner that certain circumstances allow an ALJ to fill the gaps with appropriate medical evidence when necessary in conducting a CDR.

Continuance of benefits is not called for here because the ALJ reconstructed the necessary portions of the record.  As the Commissioner sets forth:

> If the prior file cannot be located . . . If you are able to engage in substantial gainful activity, we will determine whether an attempt should be made to reconstruct those portions of the missing file that were relevant to our most recent favorable medical decision (e.g., work history, medical evidence, and the results of consultative examinations). This determination will consider the potential availability of old records in light of their age, whether the source of the evidence is still in operation; and whether reconstruction efforts will yield a complete record of the basis for the most recent favorable medical decision. If relevant parts of the prior record are not reconstructed either because it is determined not to attempt reconstruction or because such efforts fail, medical improvement cannot be found."

20 CFR § 404.1594(c)(3)(v); 20 CFR § 404.994(b)(iv)(E).

[3]  The Commissioner agrees that state agency medical consultant Dr. Kumar found Plaintiff disabled in 1997 and that Dr. Kumar's initial determination is missing from the administrative record.

[4]  POMS is the Program Operations Manual System, which is the "primary source of inform-ation used by Social Security employees to process claims for Social Security benefits."  *See* https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last visited 10/21/25).

> . . . [T]he agency reconstructed the original medical evidence from Wake Medical Center and Raleigh Infectious Disease Associates. R. 398. Records from Wake Medical Center in December 1996 consisted of emergency room treatment, consultation, and brain imaging documenting a brain mass. See R. 489, 821-22. Records from Raleigh Infectious Disease Associates from January 1997 confirm that [P]laintiff began treatment for an HIV infection, CNS large mass lesion and toxoplasmosis. R. 491- 92. The agency also developed treatment from these facilities through 2002. R 823-53. The reconstructed medical evidence demonstrates that [P]aintiff met listing 14.08(C)(4). At the time of the CPD, listing 14.08(C)(4) was met if the claimant was diagnosed with an HIV infection as well as with toxoplasmosis of an organ other than the liver, spleen, or lymph nodes. See POMS DI 34134.003 (Immune Listings from 1993 through 2002). The reconstructed medical evidence demonstrated that [P]laintiff was diagnosed with both an HIV infection and central nervous system (CNS) toxoplasmosis—thus meeting the listing. R. 491-92.[5] . . . Because the medical records confirm that [P]laintiff's impairments met listing 14.08(C)(4) and queries confirm that the CPD found [P]laintiff disabled because his HIV met a listing, the reconstructed file supports the Disability Hearing Officer's report that state agency medical consultant Dr. Kumar found plaintiff disabled in 1997 because his impairments met listing 14.08(C)(4). R. 149. For these reasons, the CDR record contained "adequate evidence from the time of the CPD so that the basis for the CPD [was] clear" and therefore, the ALJ could properly analyze the issue of medical improvement. POMS DI 28035.020(E); see also 20 C.F.R. § 404.159.

(Def.'s Sur-Reply, Dkt. # 27, at 4.)

Thus, while Dr. Kumar's initial determination is missing from the record, the basis for his determination is reflected in the relevant medical records, which were reconstructed. To the extent Plaintiff implies an RFC assessment may be missing from the record, the implication is unavailing as Plaintiff was found disabled because his impairments met a listing at step three, but an RFC is not assessed until step four. *See* 20 C.F.R. § 404.1520(a)(4).

Finally, the cases cited by Plaintiff are either not controlling authority or distinguishable on the facts, including that in those cases, the ALJ did not rely on a reconstructed record or explain how medical improvement was assessed. *Hallaron v. Colvin*, 578 F. App'x 350, 353 (5th Cir.

---

[5] Queries performed by SSA may be relied upon to help determine the basis for the CPD. *See* POMS DI 28010.020(B)(5), POMS DI 28035.015(B). According to the Commissioner, queries confirm that Plaintiff was found disabled in 1997 because his impairments met a listing. R. 320-21; *see* POMS DI 26510.045(B) (basis code A61 indicates impairment meets level of severity of listings). Queries further confirmed that the CPD listed symptomatic HIV infection as the primary diagnosis code and bacterial infections as the secondary diagnosis code. R. 322.

2014) ("The ALJ did not consider whether there was any medical improvement since the most recent favorable decision in 1997 or whether an attempt should be made to reconstruct the file pertaining to the 1997 CDR."); *Bryan S. v. Kijakazi*, No. 3:20-cv-11145, 2022 WL 2916072, at *6-7 (D. N.J. July 5, 2022) ("[T]he ALJ never cited to the CPD and the CPD itself is not included in the exhibits that were presumably considered by the ALJ," and "[t]o the extent that the CPD and related evidence was lost or was missing at the time of the ALJ's decision, the ALJ had the duty to reconstruct the file."); *Bruno v. SSA*, No. 6:19-CV-00886, 2020 WL 5269741, at *5 (W.D. La. Aug. 6, 2020) ("Neither the March 12, 2004 favorable medical decision finding that the claimant was disabled as of January 1, 2004, the CPD, nor any medical evidence relating to the award of disability—including claimant's original hearing test—are in the administrative record."); *Daniel C. v. Berryhill*, No. 5:17-cv-00074, 2018 WL 7051034, at *9 (W.D. Va. Dec. 28, 2018) ("ALJ Erwin's decision did not address the effect of these lost records on Daniel C.'s possible entitlement to continuing disability" and noting that "that medical records and any other opinions or findings relied upon in reaching the November 8, 2010 CPD will need to be located and included in any future administrative record in order to make an adequate comparison between those records and the medical evidence of Daniel C.'s medical conditions at the time the agency terminated his disability benefits."); *Smith v. Berryhill*, No. 16 CV 9976, 2018 WL 2846363, at *5 (N.D. Ill. June 11, 2018) ("But without the benefit of the actual records and previous opinion, it is difficult to determine whether the ALJ made a proper comparison of the previous records and the current records.").

Plaintiff next contends that the ALJ's RFC determination failed to account for Plaintiff's tremor. The ALJ found Plaintiff retained the RFC to perform less than the full range of light work as defined in 20 CFR 404.1567(b), with the ability to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; sit, stand, and walk for six hours in a typical eight-hour workday; push and pull as much as he can lift and carry; frequently climb ramps and stairs but not climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. Further, the ALJ found Plaintiff cannot work at unprotected heights or operate moving mechanical parts, and he cannot handle objects that vibrate. (R. 16.) In reaching his RFC, the ALJ noted that Plaintiff's hand tremors were controlled by medication (R. 18-19); while Plaintiff exhibited some right-arm weakness, it was not replicated elsewhere (R. 18); when a neurologist, Dr. Prasad Chappidi, changed Plaintif's medication, his tremors improved and at a subsequent examination, Dr. Chappidi did not observe a tremor (R. 18); examinations in 2020 and 2021 indicated that Plaintiff was doing well and had normal strength and coordination (R. 18). The ALJ further noted that while Plaintiff reported in February 2022 that he thought his tremor was increasing, at his next appointment, Plaintiff stated he was feeling well and that his tremors were being managed well (R. 18.) A March 2024 treatment note indicated that while Plaintiff had Parkinson's, there was "no tremor now." (R. 19.) Moreover, a vocational expert testified that even if Plaintiff were limited to frequent reaching, handling, and fingering with both upper extremities, Plaintiff could still perform the jobs listed at step five. (R. 56, 58.) The Court finds the ALJ properly accounted for Plaintiff's in formulating an RFC.

Notably, Plaintiff fails to identify what his specific RFC limitations should have been. *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (stating that plaintiff must "explain how the RFC determination should have been different"); *see also Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding that, even if the ALJ's mental RFC assessment had contained flaws,

5

any error was harmless, as the claimant failed to "hypothesize[ ]" the kinds of work restrictions that would have addressed their limitations in concentration, persistence, or pace). While Plaintiff asserts that the jobs listed at step five would "require a worker to regularly and reliably have full use of two steady hands, for a full shift," (Pl.'s Mot. Summ. J., Dkt. # 19, at 12), this assertion fails to acknowledge that a vocational expert testified that even if Plaintiff were limited to frequent reaching, handling, and fingering with both upper extremities, Plaintiff could still perform the jobs listed at step five. (R. 56, 58.) Plaintiff's speculative statement as to the level of hand use an individual would need for the step-five jobs is unavailing. *Aubrey v. O'Malley*, No. 24 C 7055, 2025 WL 461437, at *6 (N.D. Ill. Feb. 11, 2025) ("Guessing or speculating isn't good enough; it's up to the plaintiff to show how his medically determinable impairments cause any limitations beyond those the ALJ found."). Plaintiff points to no evidence supporting a greater functional limitation than that found by the ALJ. Ultimately, Plaintiff's attempts to have this Court reweigh evidence are improper and do not support remand. *Id*. at *5 ("The plaintiff, in essence, wants the court to reweigh the evidence and reach the result the plaintiff prefers; but that is not how 'substantial evidence' review works.").

Finally, Plaintiff asserts that the ALJ failed to adequately incorporate "time on benefits" as a factor in determining the RFC. The regulations provide that

> if you are age 50 or over and have been receiving disability benefits for a considerable period of time, we will consider this factor along with your age in assessing your residual functional capacity. This will ensure that the disadvantages resulting from inactivity and the aging process during a long period of disability will be considered.

20 C.F.R. § 404.1594(b)(4)(iii); s*ee also* 20 C.F.R. 416.994(b)(1)(iv)(C); POMS DI 28015.310.

As the Commissioner notes, the ALJ expressly acknowledged that Plaintiff "was born on September 7, 1972, and was 45 years old on July 1, 2018," and that he "is currently 51 years old[] and is an individual closely approaching advanced age." (R. 20.) The ALJ also noted that Plaintiff initially was determined disabled on January 31, 1997. (R. 12.) Plaintiff acknowledges the ALJ identified these facts but faults the ALJ for "completely fail[ing] to analyze the implications of those facts." (Pl.'s Reply, Dkt. # 25, at 3.) But an ALJ need not articulate how he considered "every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053 ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."). In any event, as with Plaintiff's second argument, his failure to identify any additional restrictions that should have been included in the RFC based on his time on benefits renders any error harmless. *Morales,* 103 F.4th at 471 (stating that the plaintiff must "explain how the RFC determination should have been different").

## Conclusion

For the reasons stated above, the Court affirms the Commissioner's decision.


**Date**: February 25, 2026


M. David Weisman
**United States Magistrate Judge**